■ METROPOLITAN TRANSPORTATION AUTHORITY, Respondent, v COSMOPOLITAN AVIATION CORPORATION, Appellant. — In a holdover proceeding, the tenant appeals, by permission, from an order of the Appellate Term of the Supreme Court, Ninth and Tenth Judicial Districts, dated April 21, 1983, which affirmed a judgment of the Second District Court, Suffolk County (Floyd, J.), entered June 2, 1982, which awarded possession of the premises and the principal sum of $151,650.93 in rent arrears to the landlord Metropolitan Transportation Authority. Order affirmed, with costs. On October 8, 1975, landlord Metropolitan Transportation Authority (MTA) entered into a lease agreement with tenant Cosmopolitan Aviation Corporation's (Cosmopolitan) corporate predecessor Maspeth Seven Leasing Corporation (Maspeth), for premises consisting of land and facilities at Republic Airport, Farmingdale, New York. The lease provided that in the event the lessee's default in the performance of any covenant, condition or obligation of the lease continued for 30 days after written notice of the default from MTA, "MTA may at any time thereafter terminate this agreement on not less than 5 days written notice to lessee". The lease further provided: "26. *Notices* — All notices, consents, demands, approvals, and requests ('notices') which are required or permitted to be given by either party to the other pursuant to any provision of this agreement shall be in writing. All such notices shall be sent by United States certified or registered mail, return receipt requested, postage pre-paid, and shall be addressed as follows (or to such other address as either party may designate from time to time by written notice to the other) * * * (ii) If to Lessee: Maspeth Seven Leasing Corporation, 14 Emerald Lane, Huntington Station, New York, 11746 Attention: George Garambone President." Shortly after the lease was signed, Maspeth moved onto the premises and changed its name to Cosmopolitan Aviation Corporation. Cosmopolitan designated Republic Airport as its address on its letterhead, on a "Memorandum of Lease" entered into between the parties, and on other documents. Moreover, correspondence from MTA to Cosmopolitan was routinely sent to Republic Airport. On June 11, 1979, MTA sent Cosmopolitan, at its Republic address, notice that it was in default of various provisions of the lease. There is no dispute that Cosmopolitan actually received this notice. By letter dated August 24, 1979, MTA notified Cosmopolitan that the lease would terminate on September 5, 1979, because Cosmopolitan had failed to cure its lease defaults. This notice of termination was sent to both the Republic and Huntington Station addresses. By notice of petition dated September 6, 1979, MTA commenced this summary

dispossess proceeding, alleging that Cosmopolitan had committed and failed to cure eight material lease defaults. By verified answer Cosmopolitan denied that it was in default and set forth eleven counterclaims against MTA. The trial commenced on June 1, 1981. On December 21, 1981, Cosmopolitan made an oral motion to dismiss the proceeding on the ground that the notice of default was defective because it was sent to Republic Airport rather than to the Huntington Station address as required by the lease. This motion was denied. The last day of testimony was April 5, 1982, and, on April 26, 1982, Cosmopolitan again moved to dismiss the petition based on the alleged defective notice of default. This motion was also denied. On June 2, 1982, judgment was entered in favor of MTA, awarding it possession of the premises and the principal sum of $151,650.93 in rent arrears. The Appellate Term affirmed the judgment and we granted leave to appeal to this court. We likewise affirm. On this appeal, Cosmopolitan's primary contention is that the Trial Judge erred in not dismissing the petition based on the defective notice of default. We disagree. Because equity abhors forfeitures of valuable leasehold interests, courts have required strict compliance with the termination provisions of leases (see *Fifty States Mgt. Corp. v Pioneer Auto Parks,* 46 NY2d 573; *Hendrickson v Lexington Oil Co.,* 41 AD2d 672; *220 West 42 Assoc. v Cohen,* 60 Misc 2d 983). Indeed, in *Hendrickson* (*supra*), even though the tenant was given actual notice of his rent default, we reversed an order affirming a judgment terminating the lease because the landlord failed to serve a 10-day notice of default by registered mail as required by the lease. In this case, however, not only did Cosmopolitan receive actual notice of its defaults, it proceeded to trial without raising an objection to the notice and affirmatively embraced the court's jurisdiction by raising counterclaims. Cosmopolitan's first objection to the default notice came on the 18th day of trial, which was two and one-half years after it received the notice, over two years after it received the dispossess petition, over one year from serving its answer and counterclaims, and more than six months after the trial began. Cosmopolitan has, therefore, waived its right to complain about any defect which may have existed in the default notice (see, generally, *Matter of D'Agostino v Bernabel,* 269 App Div 853; *Kennedy v Deignan,* 90 Misc 2d 238). We also reject Cosmopolitan's contention that the trial court abused its discretion in refusing to grant a one-day continuance to allow the appearance of its nonparty witnesses. Cosmopolitan neither identified its witnesses nor made any offer of proof as to their testimony. There was absolutely no showing that such testimony would have been other than cumulative of testimony already received over the course of the lengthy trial. Accordingly, the trial court's refusal to grant a continuance was not error (see *Harrington v Smith-town Gen. Hosp.,* 53 AD2d 685; *Pickering v Freedman,* 32 AD2d 649; *Warth v Moore Blind Stitcher & Overseamer Co.,* 125 App Div 211). Gibbons, J. P., O'Connor and Niehoff, JJ., concur.

Weinstein, J., dissents and votes to reverse the order appealed from, with the following memorandum: Inasmuch as equity abhors precipitous forfeitures of valuable leasehold interests, it is axiomatic that strict observance of lease termination provisions is mandated (see *Fifty States Mgt. Corp. v Pioneer Auto Parks,* 46 NY2d 573, 577; *City of Buffalo Urban Renewal Agency v Lane Bryant Queens,* 90 AD2d 976, 977, affd 59 NY2d 825; *Martin Delicatessen v Schumacher,* 70 AD2d 1, 8, revd on other grounds 52 NY2d 105; *Rockaway Park Series Corp. v Hollis Auto. Corp.,* 206 Misc 955, affd 285 App Div 1140). In *Hendrickson v Lexington Oil Co.* (41 AD2d 672), this court reversed an order of the Appellate Term which affirmed a judgment of the District Court terminating a lease notwithstanding the concession made by the tenant's attorney that his client had received actual notice of the landlord's demands. The lease in that case contained a provision to the effect that the landlord would accord the

tenant or its assigns notice by registered mail of any default on the part of the tenant. The tenant defaulted in the payment of rent. The landlord conceded that no notice of the rent default was ever sent to the tenant via registered mail. On those facts, the landlord's failure to serve a 10-day notice of default in the manner prescribed in the lease, i.e., by registered mail, mandated a reversal of the judgment granting the landlord possession of the premises. In the instant case, there were similar defects in the notice of default served by the petitioner landlord. The terms of the lease specifically require that all notices be sent by certified or registered mail, return receipt requested, to "Maspeth Seven Leasing Corporation, 14 Emerald Lane, Huntington Station, New York, 11746". Maspeth subsequently changed its name to Cosmopolitan Aviation Corporation with its principal place of business at Republic Airport. The notice of default which petitioner purported to serve upon Cosmopolitan was sent to the latter's airport address. Cosmopolitan now maintains, and I agree, that the holdover proceeding should have been dismissed in light of the landlord's failure to serve the notice of default in the precise manner prescribed in the lease. "Inasmuch as service of a proper notice of intention to terminate occupancy was a condition precedent to the termination of the tenancy under the lease, the deficiency in the notice deprived petitioner of a predicate for reclaiming possession of the premises" (*Chinatown Apts. v Chu Cho Lam*, 51 NY2d 786, 788). Even were I not of the opinion that the petition should have been dismissed, I note that the District Court abused its discretion in refusing to grant the continuance requested so as to allow for the appearance of Cosmopolitan's nonparty witnesses. In view of the unavailability of three of its material witnesses, on the afternoon in question, Cosmopolitan made an application that the trial be adjourned until the next day. The denial of a timely application to adjourn a trial for a reasonable time in order to await the arrival of an important witness is a basis for reversal and granting a new trial, particularly where the court is sitting without a jury and the amount of time requested is not extensive (see *Bohan v Auto Parts of Jamaica*, 74 AD2d 834). Considering the spasmodic nature of the trial, which had already spanned a period of some 10 months, and the fact that Cosmopolitan sought a continuance for one afternoon session so as to allow it to produce its witnesses and to proceed with the trial the next morning, the court's refusal to grant an adjournment was clearly an abuse of discretion. It is my conclusion that these errors, taken singularly or in combination, preclude an affirmance of the order under review.